UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM PANACCI,<br><br>Plaintiff,<br><br>v.<br><br>A1 SOLAR POWER, INC., et al.,<br><br>Defendants. | Case No. 15-cv-00532-JCS<br><br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(B)(6)), MOTION TO STRIKE (FED. R. CIV. P. 12(F)) AND FOR A MORE DEFINITE STATEMENT (FED. R. CIV. P. 12(E))**<br><br>Re: Dkt. No. 16 |

## I.   INTRODUCTION

This is a putative class action under the Telephone Consumer Protection Act ("TCPA") where Defendants are a solar installation company and a referral company that has allegedly been calling consumers to sell them solar services and to refer them to the solar installation company. Defendants have jointly filed a Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6)), Motion to Strike (Fed. R. Civ. P. 12(f)) and for a More Definite Statement (Fed. R. Civ. P. 12(e)) ("Motion"), which the Court heard on June 12, 2015. For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.[1]

## II.   BACKGROUND

### A.   Factual Background[2]

In or around July 2014, Tom Panacci ("Plaintiff") received a call on his home phone from

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] The following factual background is based on the allegations in Plaintiff's Complaint, which the Court takes as true for the limited purpose of this Motion. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

1    Defendant National Renewable Energy Center ("NREC"), "in an effort to solicit Plaintiff's
2    business for solar power related sales." Compl. at 5. Plaintiff alleges that according to NREC's
3    website, NREC is a referral company that helps consumers "find the most cost effective deal in
4    [their] area for solar." *Id*. at 4. Plaintiff's home phone was registered on the national do-not-call
5    registry ("National DNC Registry"). *Id*. Plaintiff told NREC that he was on the National DNC
6    Registry and asked to be put on NREC's company-specific do-not-call registry ("Company DNC
7    Registry"). *Id*.
8        After the first call, "NREC proceeded to call Plaintiff no less than eight additional times in
9    order to solicit Plaintiff's business." Compl. at 5. NREC "continued to try to sell Plaintiff solar
10   related services." *Id*. At times, NREC "specifically stated that the intention was to refer Plaintiff
11   to Defendant A1 Solar." *Id*. Each time, Plaintiff told NREC that he was on the National DNC
12   Registry. *Id*. Each time, he requested to be placed on NREC's Company DNC Registry. *Id*.
13   Plaintiff also alleges that on some occasions, when Plaintiff and his family members "declined to
14   take the marketing call," the "NREC telemarketers have become abusive to Plaintiff and his
15   family members." *Id*.
16       On November 19, 2014, Plaintiff's counsel sent a letter to Defendants NREC and A1 Solar
17   Power, Inc. ("A1 Solar") demanding them to stop calling Plaintiff and compensate him for the
18   TCPA violations. Compl. at 5. Plaintiff alleges that "neither Defendant responded to the letter,
19   and Defendants continued to call Plaintiff." *Id*. Plaintiff has not entered into any business
20   relationships with Defendants or provided them with his home phone number. Compl. at 6.
21       Plaintiff alleges that his experience with Defendants is not unique. Compl. at 6. To
22   demonstrate, he quotes five reviews from A1 Solar's Yelp page. *Id*. The authors of these reviews
23   fume about their experiences with A1 Solar's telemarketing practices, including calling consumers
24   five to ten times per week despite requests to stop calling. *Id*. at 6–8. Plaintiff also notes that
25   these reviews "mention the relationship with NREC." *Id*. Indeed, one review specifically relates
26   that A1 Solar "uses abusive telemarketing practices under the name National Renewable Energy
27   Center," and another reports that A1 Solar "introduce[s] themselves as National Renewable
28   Energy Center…and then refer you to A1 solar." *Id*. at 6–7.

Plaintiff claims that Defendants violated 47 U.S.C. § 227(c)(5) under the TCPA. Compl. at 11–12. He requests as relief (1) a class certification order appointing Plaintiff and his counsel to represent each of the two proposed classes; (2) a declaration that Defendants violated the TCPA; (3) actual and statutory damages under the TCPA; and (4) an injunction requiring Defendants to cease their unlawful practices in violation of the TCPA. Id. at 12.

### B. Procedural Background

As allowed by Rule 12(g), Defendants have joined three motions–under Rule 12(b)(6), Rule 12(f), and Rule 12(e)–in the present Motion. Fed. R. Civ. P. 12(g).

#### 1. Motion to Dismiss – Rule 12(b)(6)

Defendants argue that the factual allegations are insufficient to establish that the calls were "telephone solicitations" under the TCPA. Their arguments focus on NREC's liability rather than A1 Solar's liability. First, Defendants argue that Plaintiff's allegation that NREC called "to solicit Plaintiff's business" is not specific enough. Mot. at 4 ("without in anyway providing the nature of the supposed solicitation"). Defendants maintain that the Complaint contains "no facts to establish that the purpose of the alleged phone calls was to encourage the *specific* purchase or rental of, or investment in, property, goods, or services." *Id*. at 8 (emphasis in original). Regarding Plaintiff's allegation that NREC intended to refer Plaintiff to A1 Solar, Defendants assert that "referring the recipient of the call to another entity is not a prohibited purpose" under the TCPA. *Id*. at 9; Reply at 4. They claim that the mere attempt to make a referral does not make a call a telephone solicitation, and that such an inference is "obviously speculative." Mot. at 4. Further, Defendants argue that in the instances where Plaintiff allegedly "declined to take the marketing call" (Compl. at 5), Plaintiff may not assume that the declined calls were marketing calls and thus fails to properly allege the purpose of those calls. *Id*. at 9. Finally, Defendants argue that the alleged class size of "hundreds, if not thousands, of individuals" is "too conclusory to be assumed true." *Id*. at 11.

Plaintiff responds that a phone call does not need to encourage the "*specific*" purchase or rental of, or investment in, property, goods, or services to be a telephone solicitation. Opp'n at 1. Plaintiff argues that the TCPA does not require the explicit mention of a good, product, or service

3

where context makes the implication clear. *Id*. at 12.  Further, Plaintiff argues that callers are not absolved of liability simply because they do not encourage a purchase during the call; callers can still be liable for encouraging a future purchase. *Id*. at 14.  Plaintiff also asserts that A1 Solar is not absolved of liability simply because it did not make any of the phone calls; A1 Solar can still be liable under a theory of vicarious liability. *Id*. at 14 ("the fact that the NREC was seeking to refer the caller to A1 Solar Power, Inc. for the ultimate purchase does not absolve either Defendant, as 'the FCC has repeatedly acknowledged the existence of vicarious liability'").  Plaintiff goes on to distinguish the cases cited by Defendants and argues that in those cases, the court found no telephone solicitation because the defendant did not try to sell anything to the plaintiff. *Id*. at 14 (discussing *Friedman v. Torchmark Corp.,* No. 12–cv–2837, 2013 WL 1629084, *4 (S.D.Cal. Apr.13, 2013); *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 236 (11th Cir. 2011)).  Finally, Plaintiff argues that any defects in the class size allegations are irrelevant for the purposes of a 12(b)(6) motion, but even so, dismissing class allegations on the pleadings is rare and granted only where defects cannot be cured through the discovery and certification processes. *Id*. at 15.

### 2. Motion to Strike – Rule 12(f)

Defendants claim that Plaintiff's class definitions create fail-safe classes.  Mot. at 11. Plaintiff has proposed the following two class definitions:

> **National Do Not Call Registry Class ("National DNC Class")**
> All persons and entities in the United States (a) who maintain their phone number on the National Do Not Call Registry, (b) who received more than one call to that number within a 12 month period of time from either A1 Solar, the National Renewable Energy Center on A1 Solar's behalf, or the National Renewable Energy Center on any other entity's behalf, and (c) such phone calls occurred within the four years before the filing of Plaintiff Panacci's initial Complaint.
>
> **Company Do Not Call Registry Class ("Company DNC Class")**
> All persons and entities in the United States (a) whose phone numbers are registered with the A1 Solar or the National Renewable Energy Center's internal do not call Registry ("Company DNC Registry"), (b) who received phone calls from either A1 Solar or the National Renewable Energy Center on A1 Solar's behalf, or the National Renewable Energy Center on any other entity's behalf (c) after requesting to be placed on the Company DNC Registry, and (d) such phone calls occurred within the four years before the filing of Plaintiff Panacci's initial Complaint.

4

1   Compl. at 8.  In their Motion, Defendants offer two reasons why the class definitions should be

2   stricken:  (1) they create fail-safe classes because they include only people who received "an

3   unauthorized phone call" from Defendants and (2) they "lack…defined boundaries" and are too

4   "amorphous" to survive certification.  Mot. at 13–14; Reply at 5.

5       Plaintiff argues that its class definitions are not fail-safe because (1) membership can be

6   readily determined by objective criteria, without deciding the merits of each claim; (2) none of the

7   criteria of class membership, combined or individually, including registration on the National

8   DNC Registry, is dispositive of liability; and (3) unlike the cases cited by Defendants, Plaintiff's

9   class definitions do not incorporate a critical element of the claim or an affirmative defense, such

10  as consent, as a requirement for class membership.  Opp'n at 16–18.

### 3. Motion for a More Definite Statement – Rule 12(e)

12  In the alternative to dismissing the Complaint or striking the proposed class definitions,

13  Defendants argue that Plaintiff should be required to provide a more definite statement of his

14  claims and class definitions because based on the current "threadbare allegations and failsafe class

15  definition…Defendants cannot reasonably prepare a response."  Mot. at 14.  Specifically,

16  Defendants argue that they "should not be required to speculate as to which phone calls Plaintiff is

17  attacking beyond those specifically quoted in his Complaint," and that the "lack of details to

18  discern class members" makes discovery difficult to manage and an informed response as well as

19  defenses hard to ascertain.  *Id*.; Reply at 6.

20  Plaintiff points out that his claim was clear enough for Defendants "to devise an argument

21  over whether the phone calls qualify as telephone solicitations."  Opp'n at 18.  As to the adequacy

22  of the class definition, Plaintiff contends that it is more appropriate to resolve that issue on a

23  motion for class certification.  *Id*. at 19.  Furthermore, Plaintiff argues that Defendants would not

24  need "to speculate as to which phone calls Plaintiff is attacking" because Defendants can simply

25  compare the National DNC Registry against Defendants' call records.  *Id*.

## III.   LEGAL STANDARDS

### C.   Rule 12(b)(6)

28  A complaint must state a claim upon which relief may be granted, and failure to do so is

1  grounds for dismissal. Fed. R. Civ. P. 12(b)(6). A complaint may fail to state a claim because it
2  lacks a cognizable legal theory or because it fails to allege facts that would support a valid theory.
3  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule
4  12(b)(6) motion, a court takes "all allegations of material fact as true and construe[s] them in the
5  in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d
6  1480, 1484 (9th Cir. 1995). The allegations must state a claim to relief that is "plausible on its
7  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.
8  544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that
9  allows the court to draw the reasonable inference that the defendant is liable for the misconduct
10 alleged." *Id*. Detailed factual allegations are not necessary, but the allegations must be more than
11 "labels and conclusions" or "formulaic recitations[s] of the elements." *Id.*

### D. Rule 12(f)

A court may strike from a pleading "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010). A court may strike class allegations prior to discovery where the complaint shows that "a class action cannot be maintained on the facts alleged." *Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (striking class allegations where the class definition necessarily included individuals who lacked standing and where reliance was an element of the claim, which would force the court to conduct individual inquiries for each class member if the class were certified). A court must view the pleadings in the light most favorable to the non-moving party, and any doubt regarding the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Simpson v. Ramada Worldwide, Inc*., No. 12-CV-5029-PSG, 2012 WL 5988644, at *2 (N.D. Cal. Nov. 29, 2012).

### E. Rule 12(e)

Rule 12(e) states that a party may move for a more definite statement of a pleading "so vague or ambiguous" that the responding party cannot reasonably prepare a response. Fed. R. Civ.

1  P. 12(e). The motion "must point out the defects complained of and the details desired." Id.

2  However, the purpose of a Rule 12(e) motion is to attack unintelligibility, not simply lack of

3  detail. *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan.

4  16, 2009). Thus, where the detail sought is obtainable through discovery, the motion should be

5  denied. *Id*. A Rule 12(e) motion is "proper only where the complaint is so indefinite that the

6  defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably

7  be expected to frame a proper response." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*,

8  805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

## IV. ANALYSIS

### A. Motion to Dismiss – Rule 12(b)(6)

#### 1. TCPA Claim against NREC

Plaintiff sufficiently states a claim against NREC for violating the DNC registry regulations under the TCPA. 47 U.S.C. § 227(c)(3)(F) (DNC registry regulations "shall…prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber in such database); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry").

Defendants argue that Plaintiff has not alleged facts to establish that NREC's calls were "telephone solicitations." Mot. at 8. A "telephone solicitation" is defined as follows:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a). The Complaint alleges that NREC called Plaintiff a total of at least nine times between July 2014 and the filing of the Complaint in February 2015, and that during the calls, NREC tried to sell him solar power-related services. Compl. at 5. Thus, Plaintiff has alleged facts that support the elements of a telephone solicitation as defined by the TCPA. *See Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *3 (N.D. Cal. Mar.

1 16, 2015) report and recommendation adopted as modified, No. 14-CV-02445-BLF, 2015 WL
2 1544229 (N.D. Cal. Apr. 3, 2015) (finding plaintiff's allegation that he received calls made to
3 "encourage the sale of mortgage[s]" sufficient to allege a telephone solicitation); *Robbins v. Coca-*
4 *Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *4 (S.D. Cal. May 22, 2013) (finding
5 sufficient facts to support a TCPA claim where plaintiffs alleged that they received text messages
6 "promoting Coke products"; details "such as the time and content of the alleged messages" are
7 obtainable through discovery, and the lack of such details does not warrant even an order for a
8 more definite statement).

9 The cases cited by Defendants are not applicable. *Friedman v. Torchmark* held that a
10 phone call inviting plaintiff to learn about defendant's products to potentially sell to others was not
11 a telephone solicitation because it did not attempt to sell anything to the plaintiff. *See* No. 12-CV-
12 2837-IEG BGS, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013). Here, the Complaint alleges
13 that NREC did try to sell Plaintiff products–namely solar-related services. Compl. at 5. *Meadows*
14 *v. Franklin Collection Service, Inc*. is similarly inapplicable: the Ninth Circuit held that a call
15 attempting to collect debt was not a telephone solicitation because it was not an attempt to sell
16 anything to plaintiff. *See* 414 F.App'x 230, 236 (9th Cir. 2011). Then, *Freidman v. Massage*
17 *Envy Franchising, LLC* does not actually discuss whether the allegations were sufficient to
18 establish a "telephone solicitation"–the court dismissed the complaint for insufficient allegations
19 with respect to the use of an automatic telephone dialing system. *See* No. 3:12-CV-02962-L-RBB,
20 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013) (where text messages were similar in content
21 but differed enough to appear as if an ATDS was not utilized and plaintiff did not allege that
22 messages came from any short message service (SMS) code registered to defendant and merely
23 alleged that the messages were "impersonal," the court found that it was "just as conceivable that
24 the text messages were done by hand, or not using an ATDS").

25 In addition, contrary to Defendants' assertion, telephone solicitations do not need to
26 encourage a "***specific*** purchase." Mot. at 8 (emphasis in original). In *Chesbro v. Best Buy Stores,*
27 *L.P.*, the defendant argued that their calls reminding consumers to redeem their reward points were
28 not telephone solicitations because "the scripts did not explicitly reference any property, goods, or

services." 705 F.3d 913, 918 (9th Cir. 2012). The Ninth Circuit rejected the defendant's argument and held that a call does not need to encourage a specific purchase to be a telephone solicitation and that defendant's reminders to redeem reward points were telephone solicitations because they implicitly encouraged consumers to make further purchases from defendant. *See id*. Here, Plaintiff actually alleges a more specific purchase than in *Chesbro*–namely, the purchase of "solar related services." Compl. at 5.

Defendants also argue that the mere attempt to make a referral does not establish a telephone solicitation and nor are referrals prohibited under the TCPA. Mot. at 9. First, Plaintiff does not merely allege NREC's attempt to make a referral; Plaintiff also specifically alleges that NREC "tr[ied] to sell Plaintiff solar related services," which is, on its own, enough to establish that NREC called for a prohibited purpose. Compl. at 5; *see Roylance,* 2015 WL 1522244, at *3; *Robbins,* 2013 WL 2252646, at *4. Second, referring a consumer to another entity is a prohibited purpose if the purpose of the referral is to encourage a purchase, even if a purchase from another entity or a future purchase. *See* 47 U.S.C. § 227(a) (a telephone solicitation is the initiation of any call "for the purpose of encouraging [a] purchase"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14040 ¶ 142 (F.C.C. July 3, 2013) ("2003 FCC Order") (a prohibited advertisement includes any call intended to offer goods or services for sale "either during the call, or in the future," such as a call describing a vacation destination and providing the consumer with a toll-free number). Here, based on the allegations in the Complaint, it is reasonable to infer that NREC intended to refer Plaintiff to A1 Solar for the purpose of encouraging Plaintiff to purchase A1 Solar's services. *See Chesbro*, 705 F.3d at 918 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context"). Defendants do not propose any reasonable alternative inferences.

Defendants also argue that Plaintiff "admits that, in at least some cases, he never discerned the purpose of the calls, but simply assumed it was a 'marketing call,'" and that therefore, Plaintiff fails to properly plead the purpose of these "declined" calls. Mot. at 9. Defendants misrepresent Plaintiff's allegations. Nowhere does Plaintiff state that he did not discern the purpose of some

1   calls or that he simply assumed that some calls were marketing calls. Instead, Plaintiff alleges that

2   "on other occasions, NREC telemarketers have become abusive to Plaintiff and his family

3   members when they declined to take the marketing call." *Id*. Thus, the Complaint conveys that

4   Plaintiff or others in his family picked up the phone, learned that it was yet another call from

5   NREC, and then declined to continue to call, at which point the NREC telemarketers became

6   abusive toward them. Even if Plaintiff did not discern the purpose of some of the calls, based on

7   the allegations, the context here is clear and supports the reasonable inference that the $n$th call

8   from NREC, like the first call, was initiated to try to sell solar-related services to Plaintiff.

9         Finally, Defendants argue that the alleged class size of "hundreds, if not thousands, of

10   individuals" is "too conclusory to be assumed true." Mot. at 11. However, Defendants fail to

11   identify the relevance of this class certification-related argument to a 12(b)(6) motion. Dismissal

12   for failure to state a claim is "proper only where there is no cognizable legal theory or an absence

13   of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless*

14   *Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Thus, challenges to class size allegations are

15   irrelevant in a 12(b)(6) motion because the sufficiency of a legal claim is not contingent on the

16   class size allegation. *See Clerkin v. MyLife.Com*, No. C 11-00527 CW, 2011 WL 3809912, at *3-

17   4 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge

18   class allegations in part because a class action is a "procedural device, not a claim for relief" and

19   other Federal Rules of Civil Procedure exist to address impertinent allegations and class

20   certification). Defendants do not identify any Ninth Circuit authority that allows the use of a

21   12(b)(6) motion to dismiss class allegations, and the case cited by Defendants is not on point.

22   *Stonecrafters* analyzed a claim under the Illinois Consumer Fraud Act concerning an unwanted

23   one-page fax advertisement. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F.

24   Supp. 2d 610 (N.D. Ill. 2009). One factor in deciding the sufficiency of the claim is whether the

25   alleged unfair practice "causes substantial injury to consumers." *Id*. at 616. The court found that

26   the cost of receiving and printing a single page facsimile cannot be a substantial injury, and that

27   even considering the aggregate harm to the class as a whole, the aggregate harm would not amount

28   to a substantial injury where the alleged class size was "thousands of persons" and the damage

suffered per person is a couple pennies. *Id*. at 617. In a footnote, the court questioned whether the alleged class size was "anything more than a naked assertion." *Id*. Thus, in *Stonecrafters*, unlike in the present case, the class size was relevant to the merits of the legal claim–to show substantial injury. Even then, the *Stonecrafters* court did not dismiss any claims or class allegations because of the conclusory nature of the class size allegation–the court stated that "assuming" plaintiff had a good-faith basis for its class size allegation, the economic damage incurred by a thousand people would still not be enough, there was no indication that the class size would be much larger, and that even though the exact class size was unknown, the allegation of substantial injury was not plausible in this case. *See id*.

Therefore, Plaintiff has sufficiently stated a claim against NREC. Defendants' Motion under Rule 12(b)(6) is denied with respect to NREC.

### 2. TCPA Claim against A1 Solar

Even though Plaintiff does not allege that A1 Solar made any of the calls, A1 Solar may be held vicariously liable for NREC's calls if Plaintiff establishes an agency relationship as defined by federal common law between A1 Solar and NREC. *See Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 879 (9th Cir. 2014) cert. granted, No. 14-857, 2015 WL 246885 (U.S. May 18, 2015) ("a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller"). To establish an agency relationship, Plaintiff must show that A1 Solar "controlled or had the right to control" NREC–specifically the "manner and means" of the calls conducted by NREC. *See Thomas v. Taco Bell Corp*., 582 F. App'x 678, 679 (9th Cir. 2014). Alternatively, vicarious liability may also be established under an alter ego theory or principles of apparent authority and ratification. *See Thomas v. Taco Bell Corp*., 879 F. Supp. 2d 1079, 1084–85 (C.D. Cal. 2012) ("A party can also be vicariously liable if it is an alter ego of a party engaging in wrongdoing"); *Roylance*, 2015 WL 1522244, at *5 (finding allegations sufficient to show vicarious liability where defendant shipped plaintiff a loan package regarding the same mortgage offered in the phone calls, thus representing that callers had "apparent authority to conduct telemarketing on its behalf"). To find one corporation to be the alter ego of another, Plaintiff must show that (1) the

11

1  parent must control the subsidiary "to such a degree as to render the latter the mere instrumentality
2  of the former," and (2) failure to look past the corporate entity would "sanction a fraud or promote
3  injustice." *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).  To establish apparent
4  authority, Plaintiff must show his reliance on an act by A1 Solar manifesting that A1 Solar
5  authorized NREC to do the act in question.  *See Roylance*, 2015 WL 1522244, at *5.
6       Here, the allegations are insufficient to establish vicarious liability.  Plaintiff's only
7  allegation about A1 Solar's relationship to the alleged TCPA violations is that during some of the
8  calls, NREC "stated that the intention was to refer Plaintiff to Defendant A1 Solar." Compl. at 5.
9  This statement does not show that A1 Solar controlled, authorized, or even knew about NREC's
10  phone calls or that A1 Solar had any control over NREC.  Although some of the Yelp reviews
11  attached to the Complaint claim that A1 Solar conducts telemarketing "under the name of NREC"
12  and "introduce[s] themselves as NREC" in their telemarketing calls, Plaintiff makes no such
13  assertion in the Complaint.  *See Freidman*, 2013 WL 3026641, at *3 (mere assertion that the
14  message sender "was acting as an agent and/or employee of Defendants Franchising" was
15  insufficient to establish an agency relationship); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a
16  complaint does not suffice if it "tenders 'naked assertions' devoid of 'further factual
17  enhancement'").  Here, the Complaint has virtually no allegations regarding the relationship
18  between A1 Solar and NREC.  Thus, absent allegations supporting direct or vicarious liability
19  against A1 Solar, the claim against A1 Solar must be dismissed.  Defendants' Motion under
20  12(b)(6) is granted with respect to A1 Solar, with leave to amend.
21       **B.    Rule 12(f) fail-safe class**
22       A class is fail-safe if it is "defined in a way that precludes membership unless the liability
23  of the defendant is established."  *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir.
24  2010).  In other words, once it is determined that a person—a potential class member–cannot
25  prevail against the defendant, the person "drops out of the class."  *Id.*; *see Onley v. Job.com, Inc.*,
26  No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (a fail-safe class
27  consists of only people who would prevail on the liability issue).  A class definition that is fail-
28  safe requires the court to reach a legal conclusion on the validity of a person's claim in order to

determine whether the person is in the class. *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009) ("fail-safe classes are defined by the merits of their legal claims, and are therefore unascertainable prior to a finding of liability in the plaintiffs' favor").

A court may strike a class definition, even at the pleading stage, on the basis that the class definition creates a fail-safe class. *See Brazil v. Dell, Inc.*, No. 07–1700, 2008 WL 2693629, at *7 (N.D. Cal. July 7, 2008) (striking the class definition in a claim under the California False Advertising Law, where the class was in part defined as all persons who purchased products from Dell that Dell "falsely advertised as discounted").

Plaintiff's class definitions are not fail-safe. Membership in both of Plaintiff's proposed classes can be determined without reaching any legal conclusions: to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe. *See Brazil*, 585 F. Supp. 2d at 1167. None of these questions involve legal analysis. Membership can be determined by objective criteria. *See Onley*, 2013 WL 5476813, at *11 (finding that class definition is not fail-safe in part because "membership in this class can be readily determined by objective criteria").

Furthermore, the classes would not consist of only people who would prevail on the merits: for example, National DNC Class members would not prevail if a court found that NREC's calls were not telephone solicitations or that NREC obtained prior consent before placing their calls. *See id.* (finding that a class defined as all persons who received calls from defendant during a given timeframe through the use of an ATDS was not fail-safe, where the class definition did not impose additional requirements that would have created a class consisting of only people "who would prevail on this liability issue"). Likewise, Company DNC Class members would not prevail if a court found that NREC's calls were not telephone solicitations (it is less clear if a person registered on the Company DNC Registry can subsequently give consent, e.g. six months later, and the effect of that consent on the person's status in the Company DNC Registry). *Cf. Ott v. Mortgage Investors Corp. of Ohio*, No. 3:14-CV-00645-ST, 2014 WL 6851964, at *15 (D. Or.

13

Dec. 3, 2014) (finding that people who request to be placed on an internal DNC registry can subsequently consent to receiving calls under 47 C.F.R. § 64.1200(d)(5)); 47 C.F.R. § 64.1200(d)(6) ("A do-not-call request must be honored for 5 years from the time the request is made").

In addition, the proposed class definitions here are different from the fail-safe class definitions cited by Defendants because the class definitions here do not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership. *See Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking class definition in a TCPA claim under 47 U.S.C. § 227(b)(1)(C) as fail-safe, where class was defined in part as all persons who "were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant [and] with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes [and] with whom Defendant does not have an established business relationship"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359, at *3 (N.D. Ill. Dec. 13, 2007) (striking a class definition in a TCPA claim where class included persons who were sent an "unlawful fax message" and for whom the defendant "cannot provide evidence of…permission or invitation for the fax to be sent"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) (class definitions in TCPA claim were fail-safe because they were restricted to "only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of n ATDS" and thus consisted "solely of persons who can establish that defendant violated the TCPA"); *Onley*, 2013 WL 5476813, at *11 (class defined as "anyone who received [a call from defendant to her cellular phone made through the use of an ATDS] without prior express consent" was fail-safe because the class would consist of "only those potential members who would prevail"). Unlike the cases cited by Defendants, Plaintiff's class definitions do not require the court to legally conclude whether a person gave "prior consent" in order to determine whether that person is in the class. *See Brazil*, 585 F. Supp. 2d at 1167 (finding class definition to be fail-safe because "to determine who should

14

be a member of these classes, it would be necessary for the court to reach a legal determination that [defendant] had falsely advertised").

Defendants also ask the Court to strike the class definition on the basis that "given the scant factual allegations in the Complaint and the vague nature of Plaintiff's claims, Defendants cannot ascertain the boundaries of the putative class [and that] [s]uch an amorphous class definition could not survive certification, and the litigation of such a case would be costly and unmanageable." Mot. at 14. Class definitions that are plainly not ascertainable or otherwise deficient may be stricken on the pleadings. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 207 (9th Cir. 1975) (striking class allegations because state action with respect to the same controversy had already commenced and relief had been obtained such that the alleged class action would not meet the superiority requirement); *Sanders*, 672 F. Supp. 2d at 990–91 (N.D. Cal. 2009) (striking class allegations because class was not ascertainable in a fraud claim where class definition necessarily included people who lacked standing); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings"). However, here, it is not facially apparent from the pleadings that the class is unascertainable–the criteria are objective and do not require legal conclusions. Unlike the cases striking class allegations on the pleadings, here there are no obvious deficiencies in Plaintiff's class definitions to warrant striking them at the pleading stage. *See Simpson v. Best W. Int'l, Inc.*, No. 3:12-CV-04672-JCS, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012) ("Although it is not per se improper for a defendant to move to strike class allegations before the motion for class certification…most courts decline to grant such motions because 'the shape and form of a class action evolves only through the process of discovery'"). Given the lack of obvious defects in Plaintiff's class definitions and the infrequency of striking class allegations prior to motions for class certification, Defendants' Motion under Rule 12(f) is denied.

### C. Rule 12(e) more definite statement

The allegations and class definitions here are not so vague or ambiguous such that Defendants cannot reasonably prepare a response. *See* Fed. R. Civ. P. 12(e). Defendants' Motion

15

is not a true challenge to the intelligibility of the Complaint–because the Complaint is not unintelligible–but rather, Defendants' Motion is a request for details that are plainly obtainable through discovery. *See Velasquez*, 2009 WL 112919, at *4 (A motion for a more definite statement "is not a substitute for discovery; such a motion attacks unintelligibility in a pleading, not mere lack of detail. If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied"); *Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *4 (S.D. Cal. May 22, 2013) ("Defendant's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response"). Therefore, Defendants' Motion under Rule 12(e) is denied.

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED IN PART and DENIED IN PART. The Complaint with respect to only Defendant A1 Solar is DISMISSED WITH LEAVE TO AMEND. Plaintiff shall have 20 days to file an amended complaint to correct only the deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated:  June 15, 2015

JOSEPH C. SPERO
Chief Magistrate Judge