**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Judge

| | |
|---|---|
| TOM PANACCI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. C 15-532-JCS** |
| ) | |
| A1 SOLAR POWER, INC., ET AL., ) | |
| ) | |
| ) | |
| Defendants. ) | |

San Francisco, California
Friday, June 12, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
  MARSHALL LAW FIRM
  2121 N. California Boulevard
  Suite 290
  Walnut Creek, CA  94596
**BY: CHARLES D. MARSHALL**

For Defendants:
  DAVID R. SOCHER
  3443 Golden Gate Way
  Suite F
  Lafayette, CA  95459
**BY: DAVID R. SOCHER**

  COHON & POLLAK, LLP
  10250 Constellation Boulevard
  Suite 2320
  Los Angeles, CA  90067
**BY: JEFFREY M. COHON**

Reported By:       Pamela A. Batalo , CSR No. 3593, RMR FCRR
                   Official Reporter

**Friday - June 12, 2015**                                              **9:39 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE CLERK:** Calling CV 15-532-JCS, Panacci vs. A1 Solar Power, Inc., et al.

Judge, we also have co-counsel appearing by phone who is for A1 Solar.

**THE COURT:** Okay.

**THE CLERK:** Hi, Mr. Cohon. It's Karen with Judge Spero's chambers. We have called the Panacci matter. We will do appearances first in the courtroom and then on the phone. We will start with plaintiff.

**MR. MARSHALL:** Good morning, your Honor. Chuck Marshall on behalf of plaintiff Panacci.

**MR. SOCHER:** Good morning. Dave Socher on behalf of A1 Solar Power and National Renewable Energy Center.

**THE COURT:** Mr. Socher, why shouldn't I strike at least your reply brief? I mean, the motion was filed late and then to compound it, the reply brief was filed -- it's bad enough when you don't file something timely, but when you don't file something timely that you want the Court to actually read, it's particularly troubling.

Why shouldn't I just strike your reply brief?

**MR. SOCHER:** Well, your Honor, I did discuss it with

1   plaintiff's counsel and he didn't really have a problem with
2   it.
3           **THE COURT:**  That's him, but he doesn't get to respond
4   to a reply brief.
5           **MR. SOCHER:**  That's correct.
6           **THE COURT:**  Yes.
7           **MR. SOCHER:**  I transposed the numbers when I
8   calendared something.  I think it was due on the 4th and for
9   some reason I put it on the 14th.  I don't remember the days
10  exactly, but I switched the days around and I miscalendared it.
11          **THE COURT:**  Well, let's see.  I probably know.  You
12  filed the reply brief on the 14th and it was due on the 4th, so
13  you're saying you accidentally put a 1 in there.
14      Is there a similar reason for why you didn't respond to
15  the Complaint on time?
16          **MR. MARSHALL:**  Your Honor, I believe we actually had
17  reached an agreement where I allowed him time.  We didn't file
18  a stipulation to that effect.
19          **THE COURT:**  Yes.  Well, okay.  Thank you for coming to
20  his rescue.  That doesn't work for me.  I'm not going to strike
21  the reply brief, but I will tell you that the coin of the realm
22  in coming into court is your credibility.  Everything affects
23  it --
24          **MR. SOCHER:**  Yes, sir.
25          **THE COURT:**  -- when you do these two things.

1    So on the motion, I would grant in part and deny it in
2 part.  I think it's obvious this is, as alleged, a telephone
3 solicitation.  We will get into the details, but it's a
4 solicitation for solar-related services.  I think that the
5 argument to the contrary on the face of the Complaint is
6 entirely frivolous.
7    I don't think there are sufficient allegations against A1
8 Solar.  I would give you leave to amend to make such
9 allegations, but there's nothing in the Complaint that alleges
10 anything about A1 Solar controlling these or authorizing these
11 or reviewing these or anything.  So I think that in the absence
12 of some basis to hold A1 Solar in, I would dismiss them with
13 leave to amend.
14    I don't think it's appropriate to use 12(b) as a general
15 matter to attack class allegations.  I think it's particularly
16 misguided in this case because as framed, these particular
17 class allegations are not founded on legal conclusions that the
18 class satisfies the requirements of the cause of action.
19 They're based on factual determinations about who is in and who
20 is not, and as plaintiffs point out, for example, there needs
21 to be a big consent issue.  Actually it's probably going be a
22 theme of the briefs of opposing class certification.  I think
23 as a policy matter, I wouldn't strike them, but as a specific
24 matter, I think it's inappropriate in this case.
25    Would anyone like to be heard on any of those issues?

1        **MR. COHON:**  Good morning, your Honor.  This is Jeff
2   Cohon appearing by telephonic appearance, and I appreciate the
3   Court's indulgence at the last minute.  I just joined this case
4   yesterday and appreciate that very much.
5        I would like to address two brief matters, your Honor.
6   There is, for better or worse, a paucity of authority on the
7   issue of telephonic solicitation.  There have not been
8   published or, quite frankly, even unpublished decisions on the
9   statutory interpretation or the regulatory interpretation of a
10  telephonic solicitation.
11       The statute itself, the TCPA statute itself, as well as
12  the enabling federal regulation, both talk in terms of -- and I
13  understand the Court has determined A1 Solar -- there are
14  inadequate allegations as to A1 Solar, but I would like to
15  address it briefly as to the other defendant.
16       And the issue with regard to National Renewable Energy
17  Center is they've got nothing to sell.  There is no allegation
18  in the Complaint that they have any product or service or real
19  property or right to real property.  Those are the primary
20  issues within -- embraced with the TCPA and the enabling
21  regulations.  They have nothing to sell.
22       So the question is can National Renewable Energy Center
23  within the rubric of both the TCPA 47 U.S.C. 227(a)(4), as well
24  as the enabling regulation 47 C.F.R. 64.1200(f)(14), the
25  definition -- the named defendant has to be the one who makes

1  the telephonic solicitation --
2      **THE COURT:** So let me stop you there. Let me stop you
3  there.
4      There are two things I disagree with on that. One is the
5  Complaint is not a model of clarity, and reading between the
6  lines and reading the reviews attached, it seems to me that
7  they are alleging that both defendants sold the product, not
8  just that there was -- they do make reference to a referral,
9  but I think that the -- I wouldn't be surprised if we get an
10 allegation that these are the same entity when we come back.
11 But that's certainly reading between the lines.
12     The allegation in the Complaint is that both defendants
13 sold product, number one, and, number two, is where is it in
14 Subsection A of 227? It says it's got to be your product that
15 you're selling.
16     **MR. COHON:** Well, that's a good question.
17     **THE COURT:** Thank you.
18     **MR. COHON:** So the interesting thing is that if you
19 read 47 227, it does say in the definitional section that it's
20 got to be a product that it's selling, and the only product
21 that it's selling is the right to be referred to a third party
22 or not.
23     **THE COURT:** Oh, no, no, no, no, no, no, no, no.
24     **MR. COHON:** National Renewable doesn't sell any solar
25 product.

1          **THE COURT:**  So you're saying in order to get around
2  the strictures of the do-not-call list and TCPA, anybody
3  creates a company, we'll call it *Our Advertising Firm*, and Our
4  Advertising Firm can say *we want you to buy this product for*
5  *$2.50 and call this number to buy it*.  That gets around the
6  TCPA?  I don't see anything in the TCPA that says it's got to
7  be the product of the person calling.
8          **MR. COHON:**  Well, let me posit a hypothetical that
9  maybe sheds light on it.
10      Let's assume hypothetically there is a product like ABC
11  Product Company.  ABC Product Company sells product and they
12  procure leads from 10 different companies.  Now, remember, TCPA
13  is a strict liability statute.  So they buy leads from
14  companies, 10 companies, and they pay for the privilege of
15  those leads, but they don't know and have no relationship with
16  these companies.  And these companies then procure leads and
17  sell those leads to -- whether it's A1 Solar or ABC Solar or
18  XYZ Product Company.
19      It effectively makes that company procuring leads strictly
20  liable for the activities of some companies selling leads.
21      Now, in the statute --
22          **THE COURT:**  Oh, I --
23          **MR. COHON:**  -- in the statute, the Court doesn't --
24  the Congress does not say anything about *referral*.  It says
25  *telephone solicitation* and indeed even in plaintiffs'

1  opposition, on page 12 of its opposition, specifically says
2  that the broad definition -- broad definition is comprised of
3  three components, call initiated by the defendant, that's the
4  first component.
5       Now, A1 Solar is not alleged to have made any calls, and
6  the Court's acknowledged that.  To the extent that National
7  Renewable Energy Center or any other company which may, as its
8  business, procure leads and sell them to a third party, whether
9  it's Target or A1 Solar or Disney, whomever, then effectively,
10 the statute has to be rewritten de facto to add the term
11 *renewal* -- I mean, *referral* --
12      **THE COURT:**  I got to tell you, it is a clever but
13 frivolous argument.  The reason that doesn't appear as an
14 argument in any case that's been decided to date -- and I have
15 had TCPA cases -- and the reason it doesn't is because it's
16 completely frivolous.  You are making it up out of whole clot.
17      There is nothing in the statute that says that if the
18 person is the one who actually makes the pitch to sell
19 something, they have to be selling their own product, leads or
20 otherwise.
21      You buy some leads, fine, you buy some leads.  You don't
22 have to make calls to people on the do-not-call list.  They are
23 strictly liable if they do.
24      So I'm going to rule that out for this case.  And
25 eventually if some court of appeals wants to take a look at it,

1   my guess is there will be other issues you may raise in that
2   appeal.  This one will not be raised.  This just makes no
3   sense.  It completely guts the statute and has no basis.  There
4   is absolutely no basis in the language of the statute for it.
5   There is nothing in there that says you can call and sell
6   someone else's product.  You can't call and sell your own
7   product.  There is nothing in there that says that.  It's just
8   you made it up.
9        So I've got to say I find it entertaining, that argument,
10  but it just makes no sense from a statutory construction
11  purpose or from the purpose of the statute purpose.
12       There was a second thing you wanted to talk about?
13              **MR. COHON:**  I did.  And effectively, it dovetailed
14  with that issue, but in light of the Court's guidance, I think
15  they're too closely embraced because it's really a statutory
16  construction issue and it really interprets the regulation at
17  14 in a similar way.
18       The regulation is a little bit more expansive than the
19  TCPA statute itself, as is often the case, but, again, my
20  argument is that effectively to discuss referral would
21  effectively require the Court not only to rewrite the statute,
22  but also the regulation the way it's constructed.
23       So I appreciate the Court's guidance and understand where
24  the Court's ruling.
25              **THE COURT:**  Okay.

1            **MR. COHON:**  I appreciate that very much.  Thank you.
2            **THE COURT:**  Did you want to say anything?
3            **MR. MARSHALL:**  No, thank you, your Honor.
4            **THE COURT:**  All right.  So we'll get this out.  And
5   then -- so your dates for class certification are okay.  The
6   issue is -- and I am opening discovery regarding class
7   certification issues today.
8        The issue that we need to face is when and how you want to
9   talk about settlement.  I'm open to whatever timing you all
10  think is appropriate.  And I couldn't really tell from the Case
11  Management Statement what the parties' positions were and
12  particularly what the defendants' positions would be.
13       I assume the plaintiff will talk about settlement at any
14  time, but when do the defendants think they might be in a
15  position to realistically negotiate a settlement of the case?
16           **MR. COHON:**  This is Jeff Cohon.  Let me see if I can
17  respond to that.
18       My understanding -- and, again, I'm very, very new to this
19  case, but just briefly discussing this matter with Mr. Socher
20  yesterday, I understand that he broached the issue with
21  Mr. Marshall -- and both sides can correct me if I'm wrong --
22  and I understand that there was not an appetite at this moment
23  to do that.
24       Obviously these cases are uninsured cases, so, you know,
25  it's obviously -- there is an economic consideration to these

1   things, and I want to be mindful and sensitive to that.  I'm
2   one who wants to hear and always am available to hear what
3   plaintiff's settlement position is.
4        I think it would be useful in this particular case to get
5   the Amended Complaint and then for me to connect with
6   Mr. Marshall and figure out -- make a determination if there's
7   any way that we can come to some understanding or not.
8        If he determines it's premature, that's his call, but I
9   would certainly like to get a copy of the amended and extant
10  Complaint and review it and then sit down and determine where
11  they're going.
12           **MR. MARSHALL:**  Your Honor, if I may --
13           **THE COURT:**  Yes.
14           **MR. MARSHALL:**  We had discussed the shape of
15  settlement, at least settlement conferences, and the discussion
16  involved initially from the defendant whether or not we were
17  willing to settle on an individual basis.  We had said we had
18  no appetite for an individual settlement at this time unless
19  they produced documents that would show that that would be
20  appropriate as opposed to a class.  That would potentially
21  bankrupt the company and there would be no recovery for anybody
22  or for any individual case either.
23       After that, we have heard nothing back from the defendant
24  as to their settlement positions.  I am more than willing to
25  sit down and discuss the settlement position, our settlement

1  position, with defendant at any time.
2  **THE COURT:** Well, it's up to the defendants.  The
3  question is when they will be in a position -- the plaintiff
4  wants a class settlement.  Okay.  That's up to them as to
5  whether they want to propose to the Court a class settlement.
6  It's on the defendant.  When and if they want to discuss that,
7  there are two choices.  Soon, in which case we do discovery or
8  disclosures on the basis that we want to have such a
9  discussion, or later, in which case we don't even talk about it
10 until after the Court rules on class certification.
11     And it sort of depends what the defendants think of the
12 case and it's both the merits of the case and the threat that
13 any either attorneys' fees or judgments might pose to the
14 solvency of the defendant.  Both of those are factors.  But
15 it's up to the defendants.
16     I guess I'm not getting a clear enough answer from the
17 defendants.  I need to know should I manage this case like
18 you're going to have settlement discussions pre-class cert or
19 should I manage this case like you're going to have settlement
20 conference discussions after that ruling?
21 **MR. COHON:** Well, I think -- the former, your Honor.
22 I think it should be managed so that we can at least have an
23 initial discussion.  I would like to know where the plaintiffs
24 are coming from before certification takes place.
25     Obviously if it's managed and situated that settlement is

1  broached after class certification, that doesn't prevent the
2  parties from having that dialogue beforehand, but I think it
3  should be managed in the short term.
4      Mr. Socher is correct that there are serious economic
5  limitations, so if there is a resolution to be had, you know,
6  at least we should explore that after the plaintiff files its
7  First Amended Complaint.
8          **THE COURT:**  That's fine.  Remind me, when did I say we
9  are going to hear the class cert?
10         **MR. COHON:**  I think it was in May.
11         **MR. MARSHALL:**  May 13th, your Honor.
12         **THE COURT:**  Okay.  So obviously to have a negotiation,
13 obviously there is going to be an Amended Complaint that is
14 going to be filed about the end of the month.  Then you'll have
15 a discussion.
16     What information will the plaintiff and the defendants
17 need from each other to do the mediation pre-class
18 certification?
19         **MR. MARSHALL:**  Your Honor, this is Chuck Marshall for
20 the gentleman on the phone.  We would need information for the
21 scope of the class, primarily.
22         **THE COURT:**  Like what?
23         **MR. MARSHALL:**  Data relating to who he has called,
24 cross-reference it with the do-not-call registry.  Also need
25 information relating to whether or not they maintained their

1  own internal registry and who is maintained on that registry.
2  **THE COURT:** Okay. What about from the defendants'
3  point of view? Obviously you have whatever you have, but is
4  there something -- are you going to need information from the
5  plaintiff before you engage in a settlement negotiation, other
6  than that -- sort of their positions?
7  **MR. COHON:** Well, you know, obviously we would want
8  some information about the adequacy of Mr. Panacci as a class
9  representative. Start with his telephone number. You know, I
10 would like to be able to see if we can match it up and see if
11 he's got the call that he says he has --
12 **MR. MARSHALL:** It's in the Demand Letter.
13 **THE COURT:** I think you guys already have his
14 telephone number, but all right. Go ahead and look that up.
15    The question with regards to discovery is really more
16 focused than I put out there. You would need to take his
17 deposition --
18 **MR. COHON:** I do need to take his deposition. We want
19 to assess his adequacy as class rep. We want to determine the
20 way in which these calls allegedly occurred. Obviously we want
21 to determine whether or not there are the kind of allegations
22 and facts that might give rise to a potential Rule 6 motion and
23 whether or not they can meet the Rule 23 requirements. That's
24 first base, so if we can start there.
25    Obviously if there are communications with other putative

1  class members, we would like to know that as well.  And if
2  there are other communications along those lines, are there any
3  putative class members standing in the wings or with whom
4  Mr. Panacci has been in contact or his counsel has been in
5  contact, we would like to know that, too.
6      **THE COURT:**  Well, the second part is at some point
7  relevant.  I am thinking about in evaluating the case for
8  settlement.  All right.
9      Go ahead and take the named plaintiff's deposition, get
10 the named plaintiff's documents.  That seems to me to be fine.
11 I don't actually think it's going to make a great deal of
12 difference in your settlement position, given the nature of the
13 case, but I certainly wouldn't fault you for wanting to take
14 that before you proceeded, so all right.  Go ahead and do that.
15     Then let's get the documents, the data disclosures that
16 plaintiff will need to do the evaluation in terms of the calls
17 and the internal registry that is maintained by the --
18 presumably after you file the Amended Complaint -- either
19 company.
20     Are they, in fact, separate companies?
21         **MR. COHON:**  Yes.
22         **THE COURT:**  They are separately incorporated?
23     And then what I would like you to do is within the next 45
24 days, file something with the Court indicating the device that
25 you choose to have a negotiation, either a referral to the

```
 1   court's mediation panel, private mediation, you'd rather have a
 2   magistrate judge conference, what you would prefer jointly.
 3   And when you would propose precertification having such a
 4   conference or mediation or whatever it is.  And if you would do
 5   that within 45 days, I'll get out some kind of order validating
 6   your choice.
 7       But I would like to see you in about 90 days.
 8           MR. COHON:  That would be fine.  That would be great.
 9           THE CLERK:  September 11th at 2:00 p.m.  Does that
10   work for all the parties?
11           MR. MARSHALL:  Yes.
12           MR. COHON:  I'm starting a month-long trial on
13   September 10th.  I'm wondering if we can perhaps do it a few
14   days beforehand.
15           THE COURT:  Let's do it a week earlier.
16           THE CLERK:  September 4th.
17           MR. COHON:  That would be great, if that works for
18   Mr. Marshall.
19           MR. MARSHALL:  That works.
20           THE COURT:  We're all good.  All right.  See you then.
21   Give me an updated statement a week in advance.
22
23              (Proceedings adjourned at 10:04 a.m.)
24
25
```

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, June 23, 2015

*Pamela A. Batalo*
_____
Pamela A. Batalo, CSR No. 3593, RMR, FCRR
U.S. Court Reporter